IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: PETER KOVALCHICK,<br>Debtor | : | Chapter 11 |
| | : | Main Case No. 5:01-bk-03870 |

| | | |
|---|---|---|
| PETER KOVALCHICK,<br>Plaintiff | : | Adversary No. 5:06-ap-50006 |
| Indispensable and Necessary Parties | : | |
| CYRUS P. DOLBIN, JUDGE OF<br>SCHUYLKILL COUNTY COURT<br>OF COMMON PLEAS | : | |
| JOHN J. THOMAS, CHIEF JUDGE OF<br>BANKRUPTCY COURT, MIDDLE<br>DISTRICT OF PENNSYLVANIA | : | |
| v. | : | |
| R/S FINANCIAL CORP., ROBERT J.<br>ROSENSTEIN, MIRIAM SMALLS,<br>RICHARD A. SPRAGUE, SPRAGUE &<br>SPRAGUE, CHARLES J. HARDY, AND<br>THOMAS GROSHENS,<br>Defendants | : | |



FILED WILKES BARRE, PA
MAY - 5 2006
Clerk, U.S. Bankruptcy Court

## MEMORANDUM OPINION

In this Memorandum Opinion, I will consider two motions filed by the plaintiff in this adversary proceeding - a motion to strike the defendants' motion to dismiss and a motion to impose sanctions on the defendants. Because I find no support for either motion, I will deny both motions in the Order that follows. I will also address and reject the plaintiff's demands for a default judgment against the defendants.

1

## Background

This matter arose for this Court through the Designation of Bankruptcy Judge for Service in Another District within the Circuit (the "Designation"), dated March 6, 2006, by United States Third Circuit Court of Appeals Chief Judge Anthony J. Scirica. In the Designation, Chief Judge Scirica designated and assigned me to this proceeding for such time as is necessary for the disposition of the above-captioned matter. This case was then pending in the United States Bankruptcy Court for the Middle District of Pennsylvania (the "Middle District") under main Bankruptcy Docket Number 01-03870, Adversary Proceeding Number 5:06-ap-50006 (the "MD PA Docket"), and Judge Scirica's Designation was captioned as that Middle District case. The MD PA Docket reflects that, on January 19, 2006, Chief Bankruptcy Judge John J. Thomas had recused himself from further consideration in this matter and that, on February 22, 2006, Bankruptcy Judge Mary D. France, had also recused herself (together, the "Recusals").[1] Therefore, effective February 22, 2006, the only two Bankruptcy Judges in the Middle District had both recused themselves and it became clear that a judge from outside the Middle District[2] would be assigned to hear the case. On March 8, 2006, the Middle District Clerk's Office closed both the case and the MD PA Docket.[3] On that same day, the Clerk's Office for the United

---

[1] In her February 22, 2006 Order, Judge France pointed out to the parties that the Third Circuit Court would assign this adversary case to a Bankruptcy Judge outside the Middle District. This reassignment occurred on March 6, 2006.

[2] It would have been possible for this adversary proceeding to have been transferred within the Middle District to a District Court Judge who would have had jurisdiction to hear the case pursuant to 11 U.S.C. Section 1334, but this did not occur.

[3] It was unclear at that time, however, whether this adversary proceeding had actually been reassigned to me to be administered as an Eastern District case or if I had been appointed to hear the case as a specially designated judge in the Middle District. Historically, other bankruptcy

2

States Bankruptcy Court for the Eastern District of Pennsylvania (the "Eastern District") opened a new adversary proceeding docket under Adversary Proceeding Docket Number 06-02008-REF (the "ED PA Docket").[4]

Recusal Motion and Third Circuit Mandamus

On March 9, 2006, Plaintiff, Peter Kovalchick ("Plaintiff"), who is appearing pro se in this matter, filed his Motion for the Recusal/Disqualification of Richard E. Fehling, Bankruptcy Judge (the "Recusal Motion"), which I denied in my March 29, 2006 Memorandum Opinion and Order. Plaintiff's Recusal Motion had been filed on the ED PA Docket. I note that Plaintiff and other parties had filed other documents on the ED PA Docket through March 2006. In my March 29, 2006 Order, I resolved (to the extent possible at that time) the apparent conflict, confusion, and uncertainty relating to, inter alia, venue, use of the MD PA Docket, and use of the ED PA Docket. I ordered that the MD PA Docket be re-opened, that all documents filed on the ED PA Docket be transferred to the MD PA Docket, and that the ED PA Docket be closed.[5]

A further aspect of Plaintiff's request for my recusal relates to my efforts to administer the various procedural issues that I face. On March 28, 2006, the day before I denied Plaintiff's Recusal Motion, Plaintiff had filed a petition seeking a writ of mandamus with the Third Circuit

---

matters (wholly unrelated to this matter) have been transferred to judges in the Eastern District and are being administered entirely pursuant to the rules and procedures of the Eastern District with all filings in the Eastern District Clerk's Office.

[4]The ED PA Docket noted no main bankruptcy case because the underlying Chapter 11 proceeding remains open in the Middle District, with numerous ancillary adversary proceedings. Only this adversary proceeding had been transferred to the Eastern District.

[5]I reiterate this history because conflict, confusion, and uncertainty that are material to this Memorandum Opinion arose both from the assignment of this case to me and from the interplay of the local rules, practices, and procedures of the two different Districts.

3

Case 5:06-ap-50006   Doc 53   Filed 05/05/06   Entered 05/05/06 13:28:54   Desc Main
Document      Page 3 of 16

Court of Appeals demanding that it order my recusal. In Re: Kovalchick v. et al., No. 06-2083 (3d Cir.). Plaintiff also filed a Motion for Stay Pending the Emergency Petition for a Writ of Mandamus. The Third Circuit Court responded with an Order the same day, questioning its authority as the appropriate court from which to seek such a remedy because it is not the court in which an appeal of a bankruptcy decision would be filed. The Court suggested that the District Court might be the appropriate forum.[6] Nevertheless, the Circuit Court directed Plaintiff to supplement his arguments to it, explaining why it should not transfer Plaintiff's petition to the District Court pursuant to 28 U.S.C. Section 1631. Plaintiff rejected the suggestion to proceed in the District Court and filed, on April 11, 2006, his Response, arguing that the Circuit Court has jurisdiction to hear his demands at this time.

Plaintiff's petition for a writ of mandamus to the Third Circuit and his motion for a stay of proceedings in the meantime remain open and pending. I will therefore consider and decide the various matters before me until either I am stayed from proceeding further or an appropriate court determines that I should recuse myself from this matter.

### Motion To Strike Dismissal Motion

Among the documents filed on the ED PA Docket were the Motion To Dismiss

---

[6] The procedural conflict, confusion, and uncertainty in this adversary proceeding arise in the Order of the Third Circuit Court as well. In all of its references to whether the mandamus matter should be heard by the District Court, the Circuit Court Order discusses transferring the matter to the District Court for the Eastern District of Pennsylvania. At the time that Plaintiff filed his papers seeking mandamus, the caption of the underlying Designation to me included the reference to the Eastern District. Now the matter has been returned to the Middle District.

4

Case 5:06-ap-50006  Doc 53  Filed 05/05/06  Entered 05/05/06 13:28:54  Desc Main
Document      Page 4 of 16

Adversary Proceeding filed on behalf of Sprague and R/S[7] on March 9, 2006 (the "Dismissal Motion"), and the Motion To Strike the Dismissal Motion filed by Plaintiff on March 14, 2006 (the "Strike Motion"). On March 29, 2006, counsel for Sprague and R/S filed their Response to the Strike Motion (the "Response") and on April 20, 2006, Plaintiff filed his Surreply to the Response (the "Surreply"). At a status conference held in my courtroom in Reading, Pennsylvania, on April 26, 2006, all parties agreed that the Strike Motion was ripe for my consideration and disposition. The Strike Motion will be the first of the five pending motions, presently open in this adversary proceeding[8], that I will address.

### The Complaint and Procedural History

I will start my analysis of the Strike Motion with a brief review of the underlying matter that is the subject of this litigation.[9] Very briefly, it appears from Plaintiff's Complaint for Injunction (the "Complaint")[10] that Plaintiff's difficulties began nearly 24 years ago[11] when R/S

---

[7]As noted in the body of this Memorandum Opinion, on this page and on page 6, below, "Sprague" refers to the Sprague & Sprague law firm and those individual attorneys at the law firm, specifically Charles J. Hardy, Esquire, and Thomas Groshens, Esquire, who have been sued as Defendants in this proceeding and "R/S" refers to R/S Financial Corporation, and its individual agents, employees and officers, specifically Robert J. Rosenstein and Miriam Smalls, who have been sued as Defendants in this proceeding. Sprague and R/S are also referred to as "Defendants."

[8]Five motions are presently open, including the Dismissal Motion, which is not yet ripe for consideration and disposition. The five pending motions were identified, four motions were identified as being ripe for my consideration and disposition, and the schedule for filing briefs supporting and opposing the Dismissal Motion was established, in my April 26, 2006, Scheduling Order.

[9]Much of this background was also discussed briefly in the March 29, 2006 Memorandum Opinion supporting my Order denying the Recusal Motion.

[10] Although captioned and styled as a Complaint for Injunction, the Complaint includes seven counts, only one of which seeks injunctive relief. The other six counts assert various and

5

Financial Corporation, through its agents, employees, and officers (collectively, "R/S") successfully obtained a judgment in the Court of Common Pleas for Schuylkill County, Pennsylvania, against Plaintiff's parents in excess of One Million Dollars (the "Judgment").[12] R/S was represented then and continues to be represented by the law firm Sprague & Sprague through individual attorneys in that law firm (collectively, "Sprague"). R/S, through its counsel Sprague, has proceeded since 1982 with various actions in Schuylkill County state court to attempt to collect on the Judgment, including an action against Plaintiff and his wife and siblings, aiming to collect the Judgment debt from some property transferred to Plaintiff and his wife by Plaintiff's parents. Judge Cyrus P. Dolbin ("Judge Dolbin") presided over most (if not all) of the Schuylkill County litigation of R/S against Kovalchick. Judge Dolbin is identified in many of Plaintiff's allegations as the judge in Schuylkill County who heard the R/S – Kovalchick matters.

---

sundry causes of action against R/S and Sprague, each count seeking compensatory and punitive damages.

At the April 26, 2006, status conference, Plaintiff acknowledged that the fundamental issue in this adversary proceeding is the same as in much of his prior litigation in various courts. Plaintiff noted that he is presently involved in five separate court cases fighting essentially the same issue – the judgment and sale of his property that occurred 20+ years ago.

[11] As Pennsylvania State Supreme Court Justice Ronald D. Castille remarked in one of the numerous court decisions arising out of this dispute: "This matter has a long and tortured history in the courts of this Commonwealth and in the federal bankruptcy courts over the past sixteen years." R/S Financial Corporation v. Kovalchick, et al, page 1, No. J-18-1998, No. 64 M.D. Appeal Docket 1997 (Pa. August 19, 1998). Nearly eight more years have passed, adding to the long and tortured history.

[12] According to the allegations in the Plaintiff's complaint herein, the amount of the judgment, entered on May 22, 1982, after a jury trial, was $1,436,489.49. Through an appeal to the Pennsylvania Superior Court, the Plaintiff alleges, the principal amount of the judgment was reduced to $1,004,831.65 in 1985.

6

Because Plaintiff was continually unsuccessful in his efforts to resist the R/S collection efforts, he (and other members of his family) periodically filed for protection pursuant to the United States Bankruptcy Code (the "Bankruptcy Code") and, most recently, his pending Chapter 11 is open before United States Chief Bankruptcy Judge John J. Thomas ("Judge Thomas"). In the course of Plaintiff's bankruptcy proceeding, Judge Thomas granted R/S relief from the automatic stay of Section 362 of the Bankruptcy Code, permitting R/S, represented by Sprague, to return to Schuylkill County court to pursue its efforts to collect the Judgment. Also over the past few months, Plaintiff has been the subject of a certain criminal complaint alleged to have been initiated by R/S.

Plaintiff filed his Complaint in this adversary proceeding against R/S and Sprague, joining Judges Thomas and Dolbin as indispensable parties.[13] A brief flurry of activity followed the filing of the Complaint in January 2006, when Plaintiff's motion for a preliminary injunction was denied and numerous subpoenas that Plaintiff sought to enforce were quashed. Sprague and R/S filed their initial motion to dismiss and an amended motion to dismiss this adversary proceeding[14] both on February 21, 2006 (together, the "February 21 Motion To Dismiss"), which day was the deadline for filing responses to the Complaint. Additional procedural history of this case will also prove helpful and is set forth below when necessary.

### Failure To Follow Local Rules

Under Local Bankruptcy Rules for the Middle District Bankruptcy Court, Rule 7002-1, the

---

[13] The nature and status as parties of the two judges identified in the Complaint as indispensable parties is confusing and unclear, but will be addressed in my subsequent opinion(s) deciding their pending motions to dismiss.

[14] The amended motion to dismiss simply changed an incorrect date in the original motion.

7

Local Rules of the United States District Court for the Middle District, Rules 7.1 through 7.8 apply in adversary proceedings, although they may be modified or amended by the Local Rules of the Bankruptcy Court. Under the District Court Local Rules for the Middle District, Rule 7.5,[15] a party filing any motion with the court shall file a brief supporting such motion within ten (10) days. If a supporting brief is not filed within the ten-day period, Local Rule 7.5 provides that the unsupported motion will be deemed to be withdrawn. Apparently, no Local Rule of the Middle District Bankruptcy Court modifies or amends Local Rule 7.5. In any event, the Sprague and R/S Defendants filed no brief in support of their February 21 Motion To Dismiss.

As I mentioned above, Judge France recused herself on February 22, 2006, the day after the February 21 Motion To Dismiss was filed, and informed the parties that a new judge from outside the district would be assigned to this case. Counsel for Sprague and R/S explains that he did not know which District's local rules to follow. Response, Paragraphs 6 & 7. This is obviously a critical issue, because the Eastern District Bankruptcy Court, neither directly nor by incorporation of the District Court's local rules, has any Local Rule that is similar to Middle District Rule 7.5. Because it was likely that the case would be heard by a judge in the Eastern District after Judge France recused herself, the Eastern District rules might apply and no brief would be required without order of the Court.[16] Plaintiff has argued that this case was not

---

[15]Incorporated into the Local Rules of the Middle District Bankruptcy Court by Local Rule 7002-1.

[16]My Judicial Practices and Procedures, set forth within the website of the Eastern District Bankruptcy Court, specifically note that briefs are not required to be filed without direction by the Court. See www.paeb.uscourts.gov/pages/fehling/ref_chambers_info.htm. Even more confusing is that, until April, I had not yet revised the practices and procedures that had been on that website for my predecessor, the Honorable Thomas M. Twardowski, and his practices and procedures remained published on the court's website.

8

formally re-assigned to me until March 6, 2006, and that the ten-day period to file a brief in support of the February 21 Motion To Dismiss had expired on March 3, 2006. Plaintiff's argument totally misses the point that counsel for Sprague and R/S had no way of knowing to whom this case would be re-assigned, if the case would be transferred to another District, or if a judge from another district would be designated to hear this case as a Middle District adversary proceeding, subject to the rules and procedures of either the Middle District or the designated judge's home district.

On March 9, 2006, only a few days after this case was assigned to me, counsel for Sprague and R/S dutifully filed the Dismissal Motion on the ED PA Docket and, following all appropriate rules and procedures to file a motion, listed the Dismissal Motion for hearing on April 6, 2006.[17] See Local Bankruptcy Rules 9014-1(b), 7005-1(a), and 9014-3 (Eastern District of Pennsylvania Bankruptcy Court). Under the Eastern District Local Rules, no brief was required to be filed in support of the Dismissal Motion without specific order of the Court.

### Attempt To Obtain Default Against Defendants

Previously, on March 6, 2006, Plaintiff had filed various affidavits in support of default, identified collectively on the MD PA Docket as an Affidavit Regarding Default against each of the Sprague and R/S Defendants. In addition, on March 8, 2006, Plaintiff filed a document that

---

[17]Being unfamiliar with the Local Rules for the Eastern District, Plaintiff has complained about counsel's improperly setting the date of April 6, 2006, for the Dismissal Motion hearing. But counsel was clearly obliged to select and include a hearing date under the Local Rules for Eastern District. Plaintiff claims that Defendants' scheduling of the hearing for April 6, 2006, was improper: "Plaintiff, opposes any hearing scheduled by Thomas Groshens, Esq., for April 6, 2006, to which, Plaintiff was not consulted with, and which is in violation of the FRCP, as based upon the foregoing." Strike Motion, Paragraph 19. I excuse Plaintiff's lack of knowledge about the Local Rules for the Eastern District and the Federal Rules of Civil Procedure.

9

was labeled as a Motion for Default, but which was actually a request to the Clerk that default judgment should be entered against Sprague and R/S. Plaintiff, faced with and adding to the conflict, confusion, and uncertainty about the court in which this matter was pending as well as the court to which filings should be made, filed his Motion for Default with the Eastern District, identifying the Middle District as the court of venue in the caption, and using the Eastern District docket number.[18]

Consideration of the Strike Motion necessarily begins with my review of Plaintiff's Affidavit Regarding Default and Motion for Default. Plaintiff's fundamental argument in advancing his Strike Motion, as re-expressed in his oral comments during the April 26 status conference, is that the Dismissal Motion must be ineffective because default judgment had been entered against Defendants for their failure to support the February Motion To Dismiss with a brief as required by the Middle District Local Rules. See Strike Motion, Paragraphs 7-12.[19] Because default judgment was or should have been entered, he argues, the Dismissal Motion should be moot and I should strike it off the record. Plaintiff's argument therefore rests entirely upon the validity of his claim that default judgment was, should have been, or now should be, entered against Sprague and R/S.

---

[18]Furthermore, Plaintiff's Strike Motion and Sanction Motion (identified in the body of this Memorandum Opinion at page 15, below), which are the subjects of this Memorandum Opinion and Order, were improperly filed without adherence to the Eastern District Local Rules, Rules 9014-1(b), 7005-1(a), and 9014-3. Despite Plaintiff's failure to follow the rules and procedures of this Court (which rules and procedures were in effect at the time that the two motions were filed), I will excuse Plaintiff's error and defective filings and I will consider his two motions on their merits.

[19]Plaintiff's paragraphing in the Strike Motion is confusing because he has two Paragraph 11's and two Paragraph 12's. When I refer to Paragraphs 7-12, I refer to Paragraphs 7 through and including the first Paragraph 12.

10

Plaintiff has declared his belief that, upon his filing of the Affidavit Regarding Default and the Motion for Default, Sprague and R/S were automatically adjudicated to have default judgments entered against them. Strike Motion, Paragraph 10. He also declares his belief that Sprague and R/S can now defend themselves only by seeking to open the default judgments that he claims exist against them. Strike Motion Paragraph 13. Plaintiff is wrong on both of these declarations.

As counsel for Sprague and R/S correctly notes, the MD Pa Docket reflects that no default judgment exists against his clients. Response, Paragraphs 10 and 13. Middle District Local Rule 7055-1 provides that if a motion for default judgment is filed, the court may enter judgment by default against the defendant five (5) days after the motion has been served on the defendant. Plaintiff falls on every aspect of Local Rule 7055-1. Plaintiff has filed no motion for default (the Motion of Default is a motion in name only - it is clearly not a motion for default).[20] The potentially defaulted party must be given five days after the service of a motion for default before any default judgment may be entered. Because no motion for default was filed or served, the five-day period has not yet started to run. Even if all other elements necessary for the entry of a default judgment were satisfied, Rule 7055-1 permits the court, but does not require the court, to enter

---

[20] The entire text of the document labeled Motion for Default follows, showing that it is clearly not a motion:

> TO THE CLERK:
> Kindly, enter the default judgment against R/S Financial Corp.,
> Robert J. Rosenstein, Miriam Smalls, Sprague & Sprague, Richard
> A. Sprague, Charles J. Hardy, Esq., and Thomas E. Groshens, Esq.,
> in the above-captioned matter, in the amount of $30,000,000.
>
> March 8, 2006

11

default judgment and no court has done so.

Under the Middle District Local Rules, *if no other issues had intervened,* the failure to file a brief supporting the February 21 Motion To Dismiss might have led a court to consider default. But other, substantial issues of conflict, confusion, and uncertainty have in fact intervened, all as discussed above. Furthermore, Plaintiff would have been obliged to comply with all requirements of Local Rule 7055-1, which he has not done. Possibly, a court might have considered a procedurally correct effort by Plaintiff to obtain a "snap" default judgment five days after the service of a proper motion for default filed on the day after the brief was due. I have doubts about even that, however, based upon the courts' general disfavor with default judgments. In a long-standing and well-regarded decision, the Third Circuit Court of Appeals reiterated "that as a general matter this court does not favor defaults and that in a close case doubts should be resolved in favor of setting aside the default and reaching a decision on the merits." Gross v. Stereo Component Systems, Inc., 700 F.2d 120, 122 (3d Cir. 1983) (citation omitted). See also In re Miller, 90 B.R. 762, 765 (Bankr. E.D. Pa. 1988) (citing numerous other Third Circuit decisions disfavoring defaults).

The Court in Gross set forth three grounds for vacating the default judgment then before it: (1.) The defaulting party showed no prejudice that would result to it in opening the judgment; (2.) the defaulted party had a meritorious defense; and (3.) the defaulted party was not culpable in its failure to answer the complaint. 700 F.2d at 123-124. For these same three reasons, as well as a fourth reason, I believe that default judgment should not have been, and should not now be, entered against Sprague and R/S.

First, Plaintiff has pointed to no particular prejudice that he has faced because of the 6-day

12

gap between March 3, 2006, when the brief supporting the February 21 Motion To Dismiss would have been due under the Middle District rules, and March 9, 2006, when the Dismissal Motion was filed in the Eastern District.[21] Second, I have very briefly scanned the Dismissal Motion and believe that it sets forth at least some potentially credible arguments that I will, of course, not consider at this time. I will examine and determine the merits of the Dismissal Motion's arguments in more detail when the parties file their briefs supporting and opposing dismissal, as I ordered in my April 26 Scheduling Order. Third, I am convinced that the reason and rationale for the delay in the filing of a supporting brief by counsel for Sprague and R/S is the conflict, confusion, and uncertainty about applicable local rules, venue, etc., that I have previously discussed. The delay allowed counsel to determine that he should file the Dismissal Motion under the Eastern District Local Rules, which certainly does not constitute culpability under these circumstances. The fourth consideration that Plaintiff faces is that a lighter burden falls upon Defendants in this case than faced by the defendant in Gross. The Third Circuit Court in Gross dealt with, and most courts deal with, default judgments that have already been entered, whereas I am faced with one that does not yet exist. I believe that this different factual context increases Plaintiff's burden of establishing each of the Gross elements, which he has not done. As I examine Plaintiff's arguments, I believe that he has failed to establish even the basic Gross elements. See Warner v. United States of America, Internal Revenue Service, 2004 WL 3170523 (Bankr. M.D. Pa.) (citing numerous cases noting that courts do not favor default judgments and denying a request for default judgment for a 3-day delay).

---

[21]Arguably, the end date for the potential prejudice could be considered to be March 6, 2006, the date that the matter was re-assigned to me. Whether I use March 6 or March 9, however, matters not at all, because Plaintiff has shown no harm whatsoever caused by the delay.

13

Plaintiff further argues that, because counsel for Sprague and R/S had filed briefs in support of their motions to dismiss in other, prior adversary proceedings, Sprague and R/S should be defaulted for not doing so in this matter. Surreply, Paragraphs 7-9. Similarly, Plaintiff claims that, because counsel for the two judges filed their supporting briefs on the same dates as their motions to dismiss, counsel for Sprague and R/S should have done so also. Surreply, Paragraph 10. These arguments totally ignore the realities of this case. In the prior adversary proceedings, in which counsel filed briefs supporting dismissal motions, Judge Thomas had not recused himself and no doubt existed about what local rules governed. In fact, this argument supports Defendants' position because it is quite logical that only the radically changed procedural status of this adversary proceeding caused their counsel to delay filing his supporting brief. Plaintiff's other argument is that because counsel for both judges filed their supporting briefs simultaneously with their motions to dismiss, counsel for Sprague and R/S should have done that also. But counsel for the judges were not required to file their briefs simultaneously with their motions. Furthermore, they filed their motions and briefs *before* Judge France recused herself with an Order noting that the case would be assigned to a judge outside the Middle District. The judges' counsel were not faced with the conflict, confusion, and uncertainty that arose from Judge France's February 22 Order.[22]

---

[22]Plaintiff also alleges that Sprague and R/S were waiting for the results of the United States Trustee's motion to dismiss Plaintiff's main bankruptcy case upon Plaintiff's failure to pay quarterly fees and failure to file a plan of reorganization. Surreply, Paragraphs 2-6. I find no support for Plaintiff's suggestion that Defendants had not filed briefs supporting the Dismissal Motion because they hoped that the Trustee's motion to dismiss would be granted. I do not believe that the interest in or support of Sprague and R/S in the Trustee's motion to dismiss is germane to this proceeding. As stated above, I believe that Defendants' delay in filing their brief is based upon the conflict, confusion, and uncertainty that occurred after Judge France, in her February 22 recusal Order, stated that an outside judge would be assigned to hear the case.

14

### Effect of Failed Default on Strike Motion

The Strike Motion is based wholly upon Plaintiff's argument that he should be entitled to default judgment against Sprague and R/S. My discussion and analysis above convinces me that no default judgment was or should be entered against Sprague or R/S on this record. Accordingly, because it is based on the existence of default judgments against Defendants, the Strike Motion will be denied in the Order that follows. Moreover, because I reject Plaintiff's argument relating to the alleged default of Sprague and R/S, I will further order that the pending Affidavit Regarding Default and so-called Motion for Default be declared null and void, dismissed, and denied.

### Motion To Impose Sanctions

On March 14, 2006, the same day that he filed the Strike Motion, Plaintiff filed his Motion To Impose Sanctions Against Defendants (the "Sanction Motion").[23] Plaintiff's Sanction Motion was specifically directed to Sprague and R/S. All of the allegations in the Strike Motion, which allegations are found in its Paragraphs 1 - 22, are repeated verbatim as Paragraphs 1 - 22 in the Sanction Motion; all of the exhibits in the Strike Motion, which exhibits are marked as Exhibits A - E, are repeated verbatim as Exhibits A - E in the Sanction Motion. The only difference between the allegations in the Strike Motion and the allegations in the Sanction Motion is that the Sanction Motion has one additional Paragraph 23 that adds nothing substantive to Plaintiff's position:

> 23. As a result of the underhanded filing aforestated by the defendants, the Plaintiff/Debtor, has been burdened in a manner never intended by the Bankruptcy Code.

---

[23]At the Status Conference held in my courtroom on April 26, 2006, all parties agreed that the Sanction Motion is ripe for my consideration and disposition.

Because, in nearly all respects, and certainly in all material respects, the Sanction Motion is identical to the Strike Motion, the same discussion and analysis through which I determined that the Strike Motion should be denied pertain to the Sanction Motion. The Sanction Motion, therefore, will be denied in the Order that follows.

### Filing of Future Pleadings, Motions, etc.

This adversary proceeding does now and will continue to straddle the procedures of both the Middle District and the Eastern District. The potential for the parties (and this Court) to run afoul once again of the rules, practices, and procedures of the Middle District therefore clearly exists. For that reason, I will order that no party in this proceeding may file any motion or other pleading or request in this matter without first seeking my permission by application so that I can establish and coordinate the procedures (briefing, scheduling a hearing, etc.) that the parties should follow. Any such application shall be filed, of course, in the Middle District.

### Conclusion

Plaintiff's belief that he already had (or should now have) default judgments against Sprague and R/S is incorrect. After Judge France announced that this adversary case would be assigned to another judge from outside the district, the decision of counsel for Sprague and R/S not to file a brief under the Middle District Local Rules was sound and based upon a reasonable interpretation of the circumstances. Plaintiff has failed to overcome the courts' disfavor of default judgments as described in Gross, 700 F.2d at 122. The Strike Motion and the Sanction Motion must therefore be denied. Similarly, the pending so-called Motion for Default must be dismissed and denied. I will enter an appropriate Order.

16