IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: PETER KOVALCHICK, | : | Chapter 11 |
| Debtor | : | |
| | : | Main Case No. 5:01-bk-03870 |

---

| | | |
|---|---|---|
| | : | |
| PETER KOVALCHICK, | : | |
| Plaintiff | : | Adversary No. 5:06-ap-50006 |
| | : | |
| Indispensable and Necessary Parties | : | |
| | : | |
| CYRUS P. DOLBIN, JUDGE OF | : | |
| SCHUYLKILL COUNTY COURT | | |
| OF COMMON PLEAS | : | |
| | : | |
| JOHN J. THOMAS, CHIEF JUDGE OF | : | |
| BANKRUPTCY COURT, MIDDLE | : | |
| DISTRICT OF PENNSYLVANIA | : | |
| | : | |
| v. | : | |
| | : | |
| R/S FINANCIAL CORP., ROBERT J. | : | |
| ROSENSTEIN, MIRIAM SMALLS, | : | |
| RICHARD A. SPRAGUE, SPRAGUE & | : | |
| SPRAGUE, CHARLES J. HARDY, AND | : | |
| THOMAS GROSHENS, | : | |
| Defendants | : | |

---

## MEMORANDUM OPINION

In this Memorandum Opinion, I will consider the motion to dismiss filed by the

defendants in this adversary proceeding. Because I find overwhelming support for the motion to

dismiss, I will grant the motion in the Order that follows.

1

## I. Background

This is my fourth Memorandum Opinion in this adversary proceeding.[1] This matter arose

for this Court through the Designation of Bankruptcy Judge for Service in Another District

within the Circuit (the "Designation"), dated March 6, 2006, by United States Third Circuit

Court of Appeals Chief Judge Anthony J. Scirica ("Judge Scirica"). In the Designation, Judge

Scirica designated and assigned me to this proceeding for such time as is necessary for the

disposition of the above-captioned matter. This case was then pending in the United States

Bankruptcy Court for the Middle District of Pennsylvania (the "Middle District") under main

Bankruptcy Docket Number 5-01-bk-03870, Adversary Proceeding Number 5-06-ap-50006 (the

"MD PA Docket"), and Judge Scirica's Designation was captioned as that Middle District case.

The MD PA Docket reflects that, on January 19, 2006, Chief Bankruptcy Judge John J. Thomas

("Judge Thomas") had recused himself from further consideration in this matter and that, on

February 22, 2006, Bankruptcy Judge Mary I. France, had also recused herself (together, the

"Recusals").

Therefore, the only two Bankruptcy Judges in the Middle District had both recused

themselves and I, a judge from outside the Middle District, had been assigned to hear the case.

On March 8, 2006, the Middle District Clerk's Office closed both this adversary proceeding and

the MD PA Docket. On that same day, the Clerk's Office for the United States Bankruptcy

---

[1] I denied plaintiff's motion demanding that I recuse myself from hearing this matter by
my Memorandum Opinion and Order decided March 29, 2006; I denied plaintiff's motion to
strike certain pleadings filed by the defendants and plaintiff's motion for sanctions against those
same defendants (and I dismissed certain default documents filed by plaintiff) by my
Memorandum Opinion and Order decided May 5, 2006; and I granted the two motions to dismiss
filed by the two judges who had been named as indispensable parties in interest in this matter by
my Memorandum Opinion and Order decided May 18, 2006.

2

Court for the Eastern District of Pennsylvania (the "Eastern District") opened a new docket under

Adversary Proceeding Docket Number 06-02008-REF (the "ED PA Docket").

## II. PREVIOUSLY RESOLVED MOTIONS

### A. Recusal Motion, Third Circuit Mandamus, and Transfer to District Court

On March 9, 2006, Plaintiff, Peter Kovalchick ("Plaintiff"), who is appearing pro se in

this matter, filed his Motion for the Recusal/Disqualification of Richard E. Fehling, Bankruptcy

Judge (the "Recusal Motion"), which I denied in my March 29, 2006 Memorandum Opinion and

Order. In my March 29, 2006 Order, I also resolved (to the extent possible at that time) the

apparent conflict, confusion, and uncertainty relating to, inter alia, venue, use of the MD PA

Docket, and use of the ED PA Docket. I ordered that the MD PA Docket be re-opened, that all

documents filed on the ED PA Docket be transferred to the MD PA Docket, and that the ED PA

Docket be closed.

On March 28, 2006, the day before I denied Plaintiff's Recusal Motion, Plaintiff had filed

a petition seeking a writ of mandamus with the Third Circuit Court of Appeals demanding that it

order my recusal. Plaintiff had also filed a Motion for Stay Pending the Emergency Petition for a

Writ of Mandamus. The Third Circuit denied Plaintiff's mandamus motion and his stay motion.

In re Kovalchick, No. 06-2083, per curiam (3d Cir. May 26, 2006).

On May 23, 2006, Plaintiff filed a motion in the District Court in which he requested a

stay pending his appeal of my May 5, 2006 Opinion and Order and that this adversary proceeding

be transferred to the District Court.[2] Because his motion for a stay is pending and has not yet

been granted, I will consider and decide the various matters before me until either I am stayed

_____

[2]Plaintiff's motion was docketed to 3-06-cv-01058-JMM.

3

from proceeding further or an appropriate court otherwise determines that I will no longer hear this matter.

B. Motion To Strike Dismissal Motion

Among the documents filed on the ED PA Docket were the Motion To Dismiss Adversary Proceeding filed on behalf of Sprague and R/S[3] on March 9, 2006 (the "Dismissal Motion"), and the Motion To Strike the Dismissal Motion filed by Plaintiff on March 14, 2006 (the "Strike Motion"). By my Memorandum Opinion and Order on May 5, 2006, I denied the Strike Motion. Through my April 28, 2006, Scheduling Order, Plaintiff and Defendants were ordered to file their briefs supporting or opposing the Dismissal Motion, which they have done.

C. Motion To Impose Sanctions

On March 14, 2006, the same day that he filed the Strike Motion, Plaintiff filed his Motion To Impose Sanctions Against Defendants (the "Sanction Motion"). Plaintiff's Sanction Motion was specifically directed to Sprague and R/S. Because the allegations and issues in the Sanction Motion were substantially identical to those in the Strike Motion, I also denied the Sanction Motion in the May 5, 2006, Order.

D. Attempt To Obtain Default Against Defendants

On March 6, 2006, Plaintiff filed various affidavits in support of default, identified collectively on the MD PA Docket as Affidavits Regarding Default against each of the Sprague

---

[3]As noted in the body of this Memorandum Opinion, at pages 5 & 6, below, "Sprague" refers to the Sprague & Sprague law firm and those individual attorneys at the law firm, specifically Charles J. Hardy, Esquire, Thomas Groshens, Esquire, and Richard A. Sprague, Esquire, who have been sued as defendants in this proceeding, and "R/S" refers to R/S Financial Corporation, and its individual agents, employees and officers, specifically Robert J. Rosenstein and Miriam Smalls, who have been sued as defendants in this proceeding. Sprague and R/S are also referred to together as "Defendants."

4

and R/S Defendants.  In addition, on March 8, 2006, Plaintiff filed a document that was labeled as a Motion for Default, but which was actually a request to the Clerk asking that default judgment be entered against Sprague and R/S.  In my May 5, 2006, Memorandum Opinion and Order, I ordered that the Affidavits Regarding Default and so-called Motion for Default be declared null and void, dismissed, and denied.

### III. DEFENDANTS' PENDING MOTION TO DISMISS

#### A. The Complaint and Procedural History

I will start my analysis of the Dismissal Motion with a brief review of the underlying matter that is the subject of this litigation.[4]  Very briefly, it appears from Plaintiff's Complaint for Injunction (the "Complaint")[5] that Plaintiff's difficulties began nearly 24 years ago[6] when R/S Financial Corporation, through its agents, employees, and officers (collectively, "R/S") successfully obtained a judgment in the Court of Common Pleas for Schuylkill County,

---

[4]Much of this background has been discussed previously in my prior Memorandum Opinions and Orders.

[5] Although captioned and styled as a Complaint for Injunction, the Complaint includes seven counts, only one of which seeks injunctive relief.  The other six counts assert various and sundry causes of action against R/S and Sprague, each count seeking some form of compensatory and punitive damages.
At the April 26, 2006, status conference, Plaintiff acknowledged that the fundamental issue in this adversary proceeding is the same issue that has already been litigated and decided in prior litigation between these same parties that has spanned over two decades in various courts. Plaintiff noted that he was, at that time, involved in five separate court cases fighting essentially the same issue – the judgment and sale of his property that occurred 20+ years ago.

[6] As Pennsylvania State Supreme Court Justice Ronald D. Castille remarked in one of the numerous court decisions arising out of this dispute: "This matter has a long and tortured history in the courts of this Commonwealth and in the federal bankruptcy courts over the past sixteen years." R/S Fin. Corp. v. Kovalchick, 716 A.2d 1228 (Pa. 1998).  Nearly eight more years have passed, extending the long and tortured history.

5

Pennsylvania, against Plaintiff's parents in excess of One Million Dollars (the "Judgment").[7]

R/S was represented then and continues to be represented by the law firm Sprague & Sprague through individual attorneys in that law firm (collectively, "Sprague" and, together with R/S, "Defendants"). R/S, through its counsel Sprague, has proceeded since 1982 with various actions in Schuylkill County state court to attempt to collect on the Judgment, including actions against Plaintiff and his wife and siblings, aiming to collect the Judgment debt from some property transferred to Plaintiff and his wife by Plaintiff's parents. Judge Cyrus P. Dolbin ("Judge Dolbin") presided over most (if not all) of the Schuylkill County litigation between R/S and Plaintiff. Judge Dolbin is identified in many of Plaintiff's allegations in the Complaint as the judge in Schuylkill County who heard the R/S – Kovalchick matters.

Because Plaintiff was continually unsuccessful in his efforts to resist the R/S collection efforts, he (and other members of his family) filed for protection under the United States Bankruptcy Code (the "Bankruptcy Code") and, most recently, his pending Chapter 11 case is open before Judge Thomas. In the course of Plaintiff's bankruptcy proceeding, Judge Thomas granted R/S relief from the automatic stay of Section 362 of the Bankruptcy Code, permitting R/S to return to Schuylkill County Court to pursue its efforts to collect the Judgment. Because Judge Thomas found that Plaintiff has abused the system by filing numerous, duplicative adversary proceedings, on April 19, 2006, he barred Plaintiff from filing any additional

---

[7]According to the allegations in Plaintiff's Complaint herein, the amount of the judgment, entered on May 22, 1982, after a jury trial, was $1,436,489.49. Through an appeal to the Pennsylvania Superior Court, the Plaintiff alleges, the principal amount of the judgment was reduced to $1,004,831.65 in 1985. According to the Proof of Claim filed by R/S, however, the amount owed by Plaintiff was $2,030,713.30 as of October 25, 2001.

6

proceedings without prior leave of the Court.[8]

Plaintiff filed his Complaint in this adversary proceeding against R/S and Sprague, joining Judges Thomas and Dolbin as indispensable parties.[9] A brief flurry of activity followed the filing of the Complaint in January 2006, when Plaintiff's motion for a preliminary injunction was denied and numerous subpoenas that Plaintiff sought to enforce were quashed. Sprague and R/S filed both their initial motion to dismiss and an amended motion[10] to dismiss this adversary proceeding on February 21, 2006 (together, the "February 21 Dismissal Motion"), which day was the deadline for filing responses to the Complaint. On March 9, 2006, only a few days after this case was assigned to me, counsel for Sprague and R/S filed the Dismissal Motion on the ED PA Docket. The parties' briefs have been filed in support of and in opposition to the Dismissal Motion.[11]

I have reviewed and analyzed each allegation in the Complaint and I find, based upon the discussion that follows, that the Dismissal Motion should be granted and the Complaint should be dismissed. Upon my grant of the Dismissal Motion in the following Order, I will deny the February 21 Dismissal Motion as moot.

---

[8]See Kovalchick v. Dolbin, Adv. No. 5-05-ap-50275, slip op at 8 - 10 (Bankr. M.D. Pa. Apr. 19, 2006).

[9]The nature and status as parties of the two judges identified in the Complaint as indispensable parties is confusing and unclear; I granted their motions for dismissal from this adversary proceeding on May 18, 2006.

[10]The amended motion to dismiss simply changed an incorrect date in the original motion.

[11]Although the District Court for the Eastern District of Pennsylvania has promulgated local rules requiring briefs for all contested motions, L.C.R. 7.1(c), the Bankruptcy Court has neither incorporated that Rule by reference nor promulgated any other requirement for briefs.

7

## B. Dismissal Motion - Analysis of the Complaint

Plaintiff filed his Complaint on January 7, 2006. After seven pages of arguing his position and after the initial 12 Paragraphs describing the parties and this Court's jurisdiction to hear this matter, Plaintiff alleges in Paragraphs 13 - 89 of the Complaint the long-standing litany of difficulties he perceives himself to have experienced over the past 24 years of dealing with R/S and Sprague (the "Schuylkill Property Allegations"). In Paragraph 90, however, Plaintiff asserts a wholly new allegation about events that occurred in January 2006, a mere four days before the date the Complaint was filed.

Plaintiff's Paragraph 90 alleges a whole new event that warrants a fuller description. He claims that, on January 5, 2006, Sprague caused him to be unlawfully detained and arrested by the police (the "Arrest"). He asserts that the police were "forced by duress and intimidation to file a complaint" by Sprague attorneys and "other state agents" and to issue a warrant and arrest him as he left a Bankruptcy Court hearing in the Federal Building in Wilkes-Barre, Pennsylvania. The Sprague attorneys are said to have known of the Arrest. But once again, Plaintiff succumbs to alleging in Paragraph 90 the same old refrain that R/S' claims and statements that it owns his former property are false and fraudulent, which is part of the Schuylkill Property Allegations.

Before reviewing the balance of the Complaint, I will first comment on Plaintiff's brief in opposition to the Dismissal Motion. Through the eight pages of argument and six exhibits filed on June 5, 2006, Plaintiff concentrates entirely on the Schuylkill Property Allegations and totally abandons his claims arising from the Arrest or any other perceived claim. Plaintiff offers neither argument nor exhibit to support his allegations about the Arrest in the face of the Dismissal

8

Motion.[12]

After the first 90 paragraphs, Plaintiff organizes his allegations and demands into seven

counts, which allege in one form or another three categories of claims: (1.) The continuing

Schuylkill Property allegations against R/S and Sprague based entirely upon the historic events

that Plaintiff has alleged, tried, and had dismissed over the last 20+ years (defined above as the

"Schuylkill Property Allegations"), (2.) the January 5, 2006 arrest (defined above as the

"Arrest"), and (3.) claims about inconsistent statements made by Defendants in another of

Plaintiff's adversary proceedings that was dismissed by Judge Thomas (the "Inconsistent

Statements"). I will describe count-by-count what Plaintiff alleges[13] and which of the three

categories of allegations are included.[14]

<u>C. Count by Count Review of the Complaint</u>

    <u>1. Count I: Theft by Extortion</u>

Paragraph 91 and the first paragraph in each subsequent Count incorporate by reference

the allegations made in all preceding paragraphs.

Paragraph 92 - Describes the January 5, 2006 arrest - Arrest.

Paragraph 93 - Describes statements made to Judge Thomas at the hearing prior to the

---

[12]It is quite clear that Plaintiff does not actually attempt or intend to press the Arrest claims, but is merely looking for a vehicle that might allow him to argue, once again, his Schuylkill Property Allegations about events in the 1980's and 1990's. <u>See</u> fn. 5, above.

[13]My descriptions of each paragraph are not meant to be exhaustive or reiterations, but are meant to be illustrative of the gist of each paragraph.

[14]My description of the seven counts of Plaintiff's Complaint is difficult because as a pro se litigant, his various allegations and claims often stray into language and phrasing that is not easily discernible and I often try to determine with some difficulty what he means. I have construed his allegations and claims in a light most favorable to Plaintiff.

9

arrest - Schuylkill Property Allegations.

Paragraph 94 - Information on the ownership of the former Kovalchick property that was given to the police to effectuate the arrest is false - Arrest

Paragraph 95 - The arrest was intended to extort the property from Plaintiff - Arrest

Paragraph 96 - The other Defendants cooperated in the events relating to the arrest - Arrest.

Paragraph 97 - The other Defendants were willing participants in the arrest - Arrest.

Demand - $30,000,000 and punitive damages.

### 2. Count II: Illegal Conduct - Abuse of Office - Official Oppression

Paragraph 99 - The Sprague attorneys are licensed attorneys - Arrest.

Paragraph 100 - Mr. Sprague is a president judge in the Court of Judicial Discipline - Arrest.

Paragraph 101 - The Sprague law firm employs the Sprague attorneys - Arrest.

Paragraph 102 - The Sprague attorneys were willing participants in the arrest - Arrest.

Paragraph 103 - The arrest impeded Plaintiff; the Sprague attorneys conspired to scheme against Plaintiff - Arrest.

Paragraph 104 - The R/S defendants participated in the arrest - Arrest.

Paragraph 105 - No Defendant was required to do what they did - Arrest.

Paragraph 106 - Plaintiff was deprived of his rights - Arrest.

Demand - Strike the illegal title in name of R/S - Schuylkill Property Allegations; $30,000,000 and punitive damages.

### 3. Count III: Defrauding Secured Creditors

10

Paragraph 108 - Old allegations relating to the "taking" of his property by R/S through Sprague - Schuylkill Property Allegations.

Paragraph 109 - The Defendants were willful participants in the old allegations - Schuylkill Property Allegations.

Paragraph 110 - The taking of his property created problems with the recovery of his creditors - Schuylkill Property Allegations.

Paragraph 111 - The Defendants conspired to take his property - Schuylkill Property Allegations.

Demand - Return of his property, strike the illegal title in the name of R/S, $30,000,000 of damages.

### 4. Count IV: Perjury and Falsification in Official Matters - Inconsistent Statements

Paragraph 113 - Certain of the Defendants made inconsistent statements relating to the title of the property taken from Plaintiff - Inconsistent Statements.

Paragraph 114 - Certain of the Defendants committed perjury in a trial court proceeding - Inconsistent Statements.

Paragraph 115 - The other Defendants conspired with the Defendants who made the inconsistent, perjurious statements - Inconsistent Statements.

Demand - $30,000,000 and punitive damages.

Paragraph 116 is omitted from the Complaint.

### 5. Count V: Malicious Prosecution

Paragraph 118 - Defendants conspired together to cause Plaintiff's arrest on January 5, 2006 - Arrest.

11

Paragraph 119 - Defendants participated in the arrest - Arrest.

Paragraph 120 - Defendants caused Plaintiff to be served with the arrest papers upon his leaving Bankruptcy Court in a hearing on a related matter - Arrest.

Paragraph 121 - Defendants knew the statements they made to the police to cause the arrest were false - Arrest.

Paragraph 122 - Defendants returned to state court to litigate matters relating to the taking of Plaintiff's property without the automatic stay being modified - generic allegation.

Paragraph 123 - Defendants knew there was no basis for Plaintiff's arrest on January 5, 2006 - Arrest.

Paragraph 124 - Schuylkill County District Attorney did not require R/S to file a complaint to effectuate the arrest - Arrest.

Paragraph 125 - Plaintiff was deprived of his rights - Arrest.

Demand - Fair damages.

6.  Count VI: Malicious Retaliation

Paragraph 127 - Defendants participated with state officials against Plaintiff to retaliate for Plaintiff's exposing the fraud in the Pennsylvania appellate courts - Arrest.

Paragraph 128 - Defendants conspired to cover up contributions of Sprague attorneys to Pennsylvania Supreme Court Justices - Arrest.

Paragraph 129 - Defendants conspired to retaliate against Plaintiff through the arrest - Arrest.

Demand - Fair damages.

7.  Count VII: Intentional Infliction of Emotional Distress

12

Paragraph 131 - Defendants intentionally inflicted emotional distress on Plaintiff by interfering with his property rights and having him arrested - Arrest.

Paragraph 132 - Defendants' conduct was extreme, outrageous, beyond the possible bounds of decency, intolerable in civilized society, and shocks the conscience of a reasonable person - Arrest.

Paragraph 133 - Defendants caused the distress of Plaintiff - Arrest.

Paragraph 134 - Plaintiff is a reasonable person and relied on Judge Thomas' June 30, 2005 opinion - generic allegation.

Paragraph 135 - Plaintiff's emotional distress was severe and more than a reasonable man could endure - Arrest.

Paragraph 136 - Plaintiff has suffered mental pain, anguish, embarrassment, humiliation, and emotional and physical trauma - Arrest.

Demand - Injunction to avoid irreparable harm.

D. Reliance on Judge Thomas' Opinions

Over the past few months, Judge Thomas has dismissed a number of Plaintiff's other adversary proceedings, most of which included allegations and arguments identical or similar to those contained in this proceeding. I adopt the reasoning and rationale of those prior decisions in my consideration and resolution of the Dismissal Motion in this proceeding. I will draw heavily on Judge Thomas' various decisions, incorporating his legal discussions virtually in toto into the following analysis of the law and the Complaint.

1. Dismissal of Complaints Pursuant to Bankruptcy Rule 7012

I accept and adopt Judge Thomas' analysis of the procedures and burdens in motions to

13

dismiss under Fed. R. Bank. P. 7012, which analysis is set forth in Judge Thomas' Kovalchick decisions as follows: Kovalchick v. Sprague (In re Kovalchick), No. 5-05-ap-50134, slip op. at 3 - 4 (Bankr. M.D. Pa. Mar. 7, 2006) ("Kovalchick I")[15]; Kovalchick v. Groshens (In re Kovalchick), No. 5-05-ap-50267, slip op. at 3 (Bankr. M.D. Pa. Mar. 21, 2006) ("Kovalchick II"); Kovalchick v. Dolbin (In re Kovalchick), No. 5-05-ap-50295, slip op. at 2 (Bankr. M.D. Pa. Apr. 19, 2006) ("Kovalchick III").

In determining a motion to dismiss pursuant to Rule 7012, I will follow Judge Thomas and apply the standards developed to determine a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). Rule 12(b)(6) provides that a motion to dismiss may be filed for "failure to state a claim upon which relief can be granted." When determining a Rule 12(b)(6) motion to dismiss, I must accept as true all allegations in the complaint and all reasonable inferences that might be drawn from those allegations and view them in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 - 22 (1969); Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir.1991). I need not, however, accept Plaintiff's bald assertions, unwarranted inferences, or legal conclusions. Maio v. Aetna, Inc., 221 F.3d 472, 485 n. 12 (3d Cir. 2000).

Normally, matters outside the pleadings may not be considered in a Rule 12(b)(6) motion without converting the dismissal motion into a motion for summary judgment under Fed. R. Civ. P. 56. The various exceptions to the rule prohibiting consideration of outside documents, however, include an exception for matters of public record. Pension Benefit Guar. Corp. v.

---

[15]Kovalchick I is Judge Thomas' decision granting the motion to dismiss Kovalchick's amended complaint. Most of his original complaint in this adversary proceeding had been dismissed by Judge Thomas in August 2005. See pages 18 - 19, below.

14

White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Another exception exists for exhibits that are attached to the complaint, which exception carries special significance, because "when a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations." Thompson v. Illinois Dept. of Prof'l Reg., 300 F.3d 750, 754 (7th Cir. 2002) quoting N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 459 (7th Cir. 1998). In the matter of the Inconsistent Statements, addressed by Judge Thomas in Kovalchick I, Plaintiff had relied largely on exhibits attached to his complaint, all of which were closely analyzed by Judge Thomas.

    2. Dismissal of the Allegations Referred to as Inconsistent Statements

I accept and adopt Judge Thomas' analysis of the allegedly inconsistent and perjurious statements made by Defendants in various contexts in the proceedings in the main case of this Chapter 11. Kovalchick I at 5 - 7. Plaintiff's Complaint alleges that the Defendants committed fraud and perjury by filing various documents that contradict themselves regarding R/S' ownership of certain real property. According to Plaintiff, the Defendants' fraud and perjury, constituting the Inconsistent Statements, are evident because one document submitted by Defendants did not claim title to the property, whereas another document they submitted did. Judge Thomas reviewed and addressed this identical claim in Kovalchick I at 5 - 7, deciding that the documents were not inconsistent or perjurious. He concluded that the motion to dismiss before him should be granted and he dismissed all allegations and causes of action relating to the Inconsistent Statements. As noted above, I concur with Judge Thomas' reasoning and rationale in the dismissal of the Inconsistent Statements in Kovalchick I, and I, likewise, will grant the Dismissal Motion insofar as it relates to the Inconsistent Statements in Count IV of the

Complaint.

### 3. Lack of Jurisdiction Over Post-Petition Torts Such as the Claims Based Upon Arrest

I accept and adopt Judge Thomas' analysis of alleged post-petition torts allegedly

inflicted upon Plaintiff by certain of the Defendants in Kovalchick II at 5 - 9; and Kovalchick III

at 5 - 8. Plaintiff had asserted before Judge Thomas in Kovalchick II certain allegations of post-

petition stalking by thugs allegedly directed by one of the Sprague Defendants. Judge Thomas

regarded those charges in Kovalchick II as constituting theories of intentional infliction of

emotional distress, assault, or civil conspiracy. Plaintiff's claims before Judge Thomas in

Kovalchick III were based upon post-petition malicious prosecution, abuse of process, and

intentional infliction of emotional distress. In Counts I, II, IV, VI, and VII of this Complaint,

Plaintiff alleges that the Arrest, which occurred post-petition, gives rise to the following causes

of action: Extortion, abuse of office, official oppression, malicious prosecution malicious

retaliation, and intentional infliction of emotional distress.

In Kovalchick II and Kovalchick III, Judge Thomas analyzed whether he had jurisdiction

to hear Plaintiff's allegations based upon post-petition events through a review of the Bankruptcy

Court's jurisdiction under 11 U.S.C. §1334. Upon his close examination of the four bases of

Section 1334 jurisdiction,[16] Judge Thomas determined that he did not have jurisdiction to hear

that portion of Plaintiff's complaint that sought redress for damages allegedly inflicted upon him

by Defendants' alleged post-petition tortious conduct. Judge Thomas concluded that the motions

---

[16]Judge Thomas noted the Third Circuit's recent reiteration that "[b]ankruptcy jurisdiction
extends to four types of title 11 matters: (1) cases 'under' title 11; (2) proceedings 'arising under'
title 11; (3) proceedings 'arising in' a case under title 11; and (4) proceedings 'related to' a case
under title 11." Stoe v. Flaherty, 436 F.3d 209, 216 (3d Cir. 2006) citing In re Combustion
Eng'g, Inc., 391 F.3d 190, 225 (3d Cir. 2005). Kovalchick III at 5.

to dismiss before him in both Kovalchick II and Kovalchick III should be granted and he dismissed all allegations and causes of action relating to all post-petition torts advanced by Plaintiff. As noted previously, I concur with Judge Thomas' reasoning and rationale in the dismissal of the allegations of the Arrest and any other post-petition claims in Kovalchick II and Kovalchick III and I, likewise, will grant the Dismissal Motion insofar as it relates to all claims arising from the Arrest and all other post-petition conduct, as alleged in Counts I, II, V, VI, and VII of the Complaint, because I lack subject-matter jurisdiction.

### 4. Failure To State a Claim on Which Relief Could Be Granted

Because I have determined that I lack subject-matter jurisdiction to hear any allegations about post-petition torts, I will not address Defendants' arguments that Plaintiff's claims for malicious prosecution, malicious retaliation, and intentional infliction of emotional distress fail to state any claim on which relief could be granted.

### 5. Law of the Case, Collateral Estoppel, and Res Judicata.

In the Schuylkill Property Allegations claims and averments in the Complaint, Plaintiff is collaterally attacking long-standing, final decisions rendered by Judge Dolbin of the Schuylkill County Court of Common Pleas. Those decisions are clearly final and have been appealed to the Pennsylvania Superior and Supreme Courts numerous times. When the Superior Court vacated the trial court's decision against Plaintiff on "equitable" grounds in the third appeal raising the issue, the Pennsylvania Supreme Court firmly rejected Plaintiff's incessant appeals in R/S Fin. Corp. v. Kovalchick, 716 A.2d 1228 (Pa. 1998), by reversing the Superior Court. The unanimous Court declared:

> Since 1983, appellees have attempted, through three different petitions, to

17

open or strike the judgments arguing the same Rule 3146 issue. On this third and final attempt, the Superior Court found that the interests of justice outweighed the appropriateness of the application of the doctrine of res judicata and reversed the trial court's denial of the petition. These serial efforts by appellees to open or strike the judgments against them are precisely the type of behavior that the doctrine of res judicata is designed to prevent. In 1983, a final and valid judgment was entered against appellees, and the doctrine of res judicata applies to appellees' subsequent filings seeking to relitigate the identical issue. The interests of justice do not require that appellees be permitted yet another opportunity to present their challenge to the court; rather, the interests of justice mandate that this litigation be ended and that appellant finally obtain the relief that it was granted sixteen years ago. To rule otherwise would strip the doctrine of res judicata of any meaning.

Id. at 1230. Plaintiff sought reconsideration of this reversal order, which was denied. Plaintiff did not file a Writ of Certiorari with the United States Supreme Court.

More recently, in 2004, Judge Dolbin ruled in an action to quiet title, once again recognizing that R/S holds undisputed title to Plaintiff's former property.[17] The Superior Court dismissed Plaintiff's appeal from Judge Dolbin's 2004 decision,[18] the Supreme Court denied his Petition for Allowance of Appeal and Petition for Stay Nunc Pro Tunc,[19] and the Supreme Court rejected his Application for Reconsideration.[20]

On August 16, 2005, Judge Thomas granted a motion to dismiss the complaint in an

---

[17]R/S Fin. Corp. v. Kovalchick, No. S-1562-1985 (Schuyl. Cty. Ct. Comm. Pleas Dec. 9, 2004).

[18]R/S Fin. Corp. v. Kovalchick, et al., No. 2012 MDA 2004 and Nos. 9 and 10 MDA 2005 per curiam (Pa. Super. Ct. Feb. 9, 2005).

[19]R/S Fin. Corp. v. Kovalchick, et al., Nos. 335, 336, & 337 MAL 2005 per curiam (Pa. Sep. 27, 2005).

[20]R/S Fin. Corp. v. Kovalchick, et al., Nos. 335, 336, & 337 MAL 2005 per curiam (Pa. Nov. 9, 2005).

adversary proceeding filed by Plaintiff that eventually led to the Kovalchick I decision.[21]  When

he granted the motion to dismiss, Judge Thomas gave Plaintiff leave to file an amended

complaint.  Kovalchick v. Sprague (In re Kovalchick), No. 5-05-ap-50134, proceeding memo

(Bankr. M.D. Pa. Aug. 16, 2005) ("Kovalchick I-A").   The original complaint in Kovalchick I-

A was fundamentally a thinly veiled attempt to have Judge Thomas review Judge Dolbin's

decisions relating to the Schuylkill Property Allegations, and Judge Thomas dismissed them with

little discussion.  See In re Kovalchick, No. 5-01-03870, Transcript of Aug. 16, 2005,

proceeding, No. 5-05-ap-50134A, page 127, line 6, through page 128, line 12 (docket document

number 269, filed Sept. 22, 2005).  The complaint in Kovalchick I-A also alleged certain

disciplinary actions against the Sprague attorneys for their alleged breaches of various Rules of

Professional Conduct in the Schuylkill County actions stemming from their representation of R/S

against Plaintiff.  To the extent that the complaint referred to matters that went beyond the R/S

acquisition and ownership of Plaintiff's property, Judge Thomas permitted Plaintiff to file an

amended complaint.

 The doctrines of res judicata (now known as claim preclusion) and collateral estoppel

(now known as issue preclusion) prevent relitigation of an issue or claim that has been previously

litigated and decided.  See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979).  As stated

by the United States Supreme Court:

> Claim preclusion generally refers to the effect of a prior judgment
> in foreclosing successive litigation of the very same claim, whether
> or not relitigation of the claim raises the same issues as the earlier
> suit.  Issue preclusion generally refers to the effect of a prior
> judgment in foreclosing successive litigation of an issue of fact or

---

[21]See fn. 15 and text, above.

19

law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim.

New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001) (citations omitted); see also Eastern Pilots Merger Cmte. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.), 279 F.3d 226, 232 (3d Cir. 2002). Likewise, "the law of the case doctrine is similar in that it limits relitigation of an issue once it has been decided." Continental Airlines, 279 F.3d at 232.

Res judicata (claim preclusion) applies when there has been "(1) a final judgment on the merits of a prior suit involving (2) the same claim and (3) the same parties or their privies." Equal Employment Opportunity Comm. v. United States Steel Corp., 921 F.2d 489, 493 (3d Cir. 1990) (citation omitted). Collateral estoppel applies when (1) the issue decided in the prior litigation is the same as the issue presented in the later action, (2) a final decision on the merits has been entered in the prior litigation, and (3) the party against whom the doctrine is asserted was either a party or in privity with a party to the prior adjudication and had a full and fair opportunity to litigate the issue in the prior action. Seborowski v. Pittsburgh Press Co., 188 F.3d 163, 169 (3d Cir. 1999). The law of the case doctrine[22] mandates that, when an issue of law or fact has been determined by a valid and final ruling, that issue should not be reexamined in the "same litigation." Hamilton v. Leavy, 322 F.3d 776, 786-87 (3d Cir. 2003). The obvious purpose of the doctrine is to promote finality, consistency, and judicial economy. See In re City of Philadelphia Litig., 158 F.3d 711, 717-18 (3d Cir. 1998). Under the law of the case doctrine, when a court decides upon a rule of law, that decision continues to govern the same issues in

---

[22]I have reviewed and analyzed the briefs of both Plaintiff and Defendants and accept the well-presented arguments of Defendants, much of whose brief I will draw upon in the next few paragraphs of this section.

20

subsequent stages within the same case. Christianson v. Colt Indus. Operating Corp., 486 U.S.
800, 816 (1988). The res judicata and collateral estoppel doctrines share the "dual purpose of
protecting litigants from the burden of relitigating an identical issue with the same party or his
privy and of promoting judicial economy by preventing needless litigation." Parklane Hosiery
Co., 439 U.S. at 326.

In Kovalchick I-A, Judge Thomas made clear that Plaintiff would not be allowed to
relitigate or, in essence, obtain a federal court review of a multitude of state court proceedings,
orders, and judgments, including two final determinations of the Pennsylvania Supreme Court.
In the Schuylkill Property Allegations in this Complaint, Plaintiff demands the very relief that
Judge Thomas refused to provide in Kovalchick I-A.[23] The bulk of Plaintiff's allegations focus
on the alleged misuse of state court procedures. Any question about the finality of R/S'
judgment against Plaintiff has been irrefutably resolved in R/S Fin. Corp., 716 A.2d at 1230,
which affirms the garnishment judgment against Plaintiff, and in the more recent quiet title
litigation, both of which have gone all the way through the appellate process. Recognizing the
"long and tortured history" of this case, Id. at 1228, the Pennsylvania Supreme Court concluded
that to permit any further challenge to the garnishment judgments "would strip the doctrine of res
judicata of any meaning." Id. at 1230.

Plaintiff's claims against Defendants are based primarily on his abject refusal to accept
that the litigation through which he lost his property in Schuylkill County has proceeded to final

---

[23]To the extent that any of Judge Thomas' opinions are on appeal and do not present a
final decision as required for law of the case, collateral estoppel, or res judicata, I rely on and
adopt his analysis and reasoning. To the extent that his decisions are or become final, I regard
them as binding on the parties due to the law of the case, collateral estoppel, and res judicata
doctrines.

21

judgment, no longer subject to appeal or reconsideration by this or any court.

The law of the case doctrine bars many of the claims or causes of action alleged in the Complaint because they are reiterations of claims, issues and charges already resolved by Judge Thomas in Kovalchick I-A, Kovalchick I, Kovalchick II, and Kovalchick III.[24] The collateral estoppel doctrine bars many of the allegations in the Complaint because they are based on events and decisions that occurred years ago in the Schuylkill County Court and numerous appeals to the Pennsylvania appellate courts. The ruling adverse to Plaintiff has echoed and re-echoed through Pennsylvania's appellate courts, all of which have rejected Plaintiff's continuing efforts to relitigate R/S' ownership of Plaintiff's former property. See R/S Fin. Corp. v. Kovalchick, 716 A.2d at 1230; R/S Fin. Corp. v. Kovalchick, No. 1123 MDA 2002, 2003 WL 24117162 at *1 (Pa. Super. Ct. Apr. 17, 2003). To the extent that Plaintiff's claims are based upon the same

---

[24]I recognize that Judge Thomas' decisions in Kovalchick I-A, Kovalchick-I, Kovalchick II, and Kovalchick III arose in the context of three different adversary proceedings, separate and distinct from the adversary proceeding presently before me. All of the adversary proceedings before Judge Thomas, however, involved substantially the same issues and substantially the same parties as are involved in the proceeding before me. In fact, Plaintiff, the party against whom the law of the case doctrine is being applied herein, was the plaintiff in all the referenced adversary proceedings before Judge Thomas. Therefore, I find that Judge Thomas' decisions in Kovalchick I-A, Kovalchick I, Kovalchick II, and Kovalchick III are the law of the case for those identical issues raised in the adversary proceeding presently before me. See Cohen v. Bucci, 905 F.2d 1111, 1112 (7th Cir. 1990); Artra Group, Inc. v. Salomon Bros. Holding Co., No. 95 C 5233, 1996 WL 637595, at *4 (N.D. Ill. Oct. 31, 1996); Official Comm. of Unsecured Creditors v. Aust (In re Network Access Solutions, Corp.), 330 B. R. 67, 76 (Bankr. D. Del. 2005); Friend v. Provenza (In re Northshire Neurological Surgery Assoc.), 316 B.R. 177, 220 n. 236 (Bankr. E.D. La. 2003). I note that I find Judge Fox's decision in Zimmerman v. Frem Corp. (In re Kenval Marketing Corp.), 69 B.R. 922, 926 (Bankr. E.D. Pa 1987) distinguishable from the proceeding before me because Judge Fox, in finding that a prior decision in the main bankruptcy case was not the law of the case in a subsequent adversary proceeding before him, was confronted with a situation, unlike the situation before me, in which (1) the relief sought in the main case was very different from the relief sought in the adversary proceeding and (2) the parties in the adversary proceeding were not parties to the decision in the main bankruptcy case.

22

claims and issues that have been addressed to the Pennsylvania courts and have been decided by the Pennsylvania courts, the alternative doctrine of res judicata bars them.[25]

### 6. Rooker-Feldman Doctrine

From another perspective, Plaintiff's continuing attempts to attack the decisions of the state court are barred by the Rooker-Feldman doctrine, which "prevents 'inferior' federal courts from sitting as appellate courts for state court judgments." Knapper v. Bankers Trust Co., (In re Knapper), 407 F.3d 573, 580 (3d Cir. 2005). Under the Rooker-Feldman doctrine, a lower federal court lacks jurisdiction to review a state court judgment if the relief sought is in the nature of appellate review. Id. at 580. Therefore, "the Rooker-Feldman doctrine prohibits [a lower federal court] from adjudicating actions in which the relief requested requires determining whether the state court's decision is wrong or voiding the state court's ruling." Id., quoting Walker v. Horn, 385 F.3d 321, 329 (3d Cir. 2004) (citations omitted). I therefore believe that any request of Plaintiff that calls upon me to second-guess or re-try or overturn the state court rulings[26] must be dismissed.

### 7. Application of the decisions and the law to the seven Counts in the Complaint

Some of the Counts in the Complaint include allegations and issues that cover more than one of the three categories of events – Schuylkill Property Allegations, Arrest, or Inconsistent Statements. Multiple rationales and grounds exist, therefore, for the dismissal of each Count of

---

[25]The numerous protracted, repetitious, and convoluted adversary proceedings initiated by Plaintiff in his attempt to undo R/S' state court judgments and acquisition of property have led to the interesting situation in which the law of the case in these bankruptcy adversary proceedings is that collateral estoppel and res judicata apply, based upon the state court decisions.

[26]Which would include the Arrest, were it not for my lack of subject-matter jurisdiction to consider it.

23

the Complaint, as follows.

Count I: The various allegations and claims raised in Count I will be dismissed based upon lack of subject-matter jurisdiction over post-petition events, the law of the case, collateral estoppel, res judicata, and <u>Rooker-Feldman</u>.

Count II: The various allegations and claims raised in Count II will be dismissed based upon lack of subject-matter jurisdiction over post-petition events, the law of the case, collateral estoppel, res judicata, and <u>Rooker-Feldman</u>.

Count III: The various allegations and claims raised in Count III will be dismissed based upon the law of the case, collateral estoppel, res judicata, and <u>Rooker-Feldman</u>.

Count IV: The various allegations and claims raised in Count IV will be dismissed based upon the law of the case and collateral estoppel.

Count V: The various allegations and claims raised in Count V will be dismissed based upon lack of subject-matter jurisdiction over post-petition events and, to the extent that Count V includes any allegation or issue beyond the Arrest, the law of the case, collateral estoppel, res judicata, and <u>Rooker-Feldman</u>.

Count VI: The various allegations and claims raised in Count V will be dismissed based upon lack of subject-matter jurisdiction over post-petition events and, to the extent that Count VI includes any allegation or issue beyond the Arrest, the law of the case, collateral estoppel, res judicata, and <u>Rooker-Feldman</u>.

Count VII: The various allegations and claims raised in Count V will be dismissed based upon lack of subject-matter jurisdiction over post-petition events.

24

<u>Conclusion</u>

Each of the seven Counts in the Complaint will be dismissed because of lack of jurisdiction over post-petition events, the law of the case, collateral estoppel, res judicata, <u>Rooker-Feldman</u>, or because some combination of them applies, as set forth above. I will enter an appropriate Order.